(174 App. Div. 102)

## CALLEGARI v. SARTORI et al.

(Supreme Court, Appellate Division, Second Department. September 29, 1916.)

1. FRAUDULENT CONVEYANCES ⬤⟿105—EFFECT AS TO CREDITORS—TRUSTS.

Where plaintiff loaned money to his insolvent uncle, who, mingling such sum and money belonging to his wife, purchased land, taking title in the name of himself and his wife as tenants by entireties, while there was no actual fraud, and there was consideration, the transaction was presumptively fraudulent under Real Property Law (Consol. Laws, c. 50) § 94, providing that grants of realty to one for consideration paid by another are presumed fraudulent as against the creditors at that time of the person paying, and a trust results in favor of such creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 345; Dec. Dig. ⬤⟿105.]

2. FRAUDULENT CONVEYANCES ⬤⟿313(2)—EFFECT AS TO CREDITORS—TRUSTS.

Such trust should be enforced by sale of only the share which plaintiff's money purchased, and not the entire property.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 969, 970; Dec. Dig. ⬤⟿313(2).]

3. FRAUDULENT CONVEYANCES ⬤⟿105—EFFECT AS TO CREDITORS—TRUSTS.

Such conveyance was not void.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 345; Dec. Dig. ⬤⟿105.]

4. FRAUDULENT CONVEYANCES ⬤⟿208—EFFECT AS TO CREDITORS—TRUSTS.

Such resulting trust is enforceable only by persons who were creditors at the time of the conveyance, and not by a sole creditor, both individually and in his subsequently arising capacity as administrator of his debtor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 631, 633; Dec. Dig. ⬤⟿208.]

5. LIMITATION OF ACTIONS ⬤⟿100(3)—TIME OF RUNNING—DISCOVERY OF FRAUD.

An action, though begun more than six years after filing of fraudulent conveyance, is not barred by the six-year statute, if begun only two years after discovery of the fraud.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 482, 483; Dec. Dig. ⬤⟿100(3).]

Appeal from Trial Term, Kings County.

Suit by John Callegari, individually and as administrator of Giuseppe Sartori, deceased, against John Sartori and others. Judgment for plaintiff and defendants appeal. Modified and affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

David J. Wagner, of New York City, for appellants.

Louis J. Altkrug, of Brooklyn, for respondent.

THOMAS, J. By deed dated May 15, 1907, in fulfillment of a contract with Joseph Sartori, Armgardt conveyed land to Joseph and Carolina Sartori, his wife, for the stated consideration of $7,200, which was met by the assumption by the grantee of a mortgage for $3,000 and by $2,700 paid by the husband and $1,500 contributed by the wife. On May 15, 1907, Joseph Sartori became indebted to his

nephew in the sum of $1,500 for money borrowed for the purposes of the purchase. Joseph, while yet a resident of the county of Kings, died in Italy December 12, 1908. On January 12, 1914, Callegari was appointed by the surrogate of that county administrator of Joseph's estate. Joseph paid interest for one year on the debt to his nephew. Mrs. Sartori, after her husband's death, made some payment. She died November 4, 1915, in possession of the land, to which occupation her children succeeded. The plaintiff testified that he did not discover until the fall of 1913 that the title had been taken in the name of his uncle and his wife. Then he brought suit. The court found that such conveyance was fraudulent and void as to Joseph's creditors on May 15, 1907, to the extent contributed by him, but subjects all the land to the payment of Joseph's debt. The deed was recorded May 16, 1907, the day after its date.

[1] There is no explanation of plaintiff's failure to learn of the conveyance to both parties. If he understood that the conveyance was to his uncle only, his delay in enforcing his claim against the land is likewise inexplicable. But where is the evidence of conscious fraudulent action on the part of either man or wife? It is said to be in this: That Joseph, being indebted to his nephew, bought the land and paid the consideration and took the title in the name of his wife. But the fact is that Joseph did not pay all the consideration, nor did he take title in the name of his wife, but in the name of himself and his wife, as much one as the other. The statute (section 94 of the Real Property Law) provides that:

"A grant of real property for a valuable consideration, to one person, the consideration being paid by another, is presumed fraudulent as against the creditors, at that time, of the person paying the consideration, and, unless a fraudulent intent is disproved, a trust results in favor of such creditors, to an extent necessary to satisfy their just demands."

Joseph paid $27/42$ of the money and the wife $15/42$, and they both became bound to pay the $3,000 mortgage. It was their right to have the conveyance made to them in their two names. The fact of inequality of payment did not make fraudulent the manner of their taking. Where, then, is his or her fraud in fact? Although they took the title in their several names, the law infers a tenancy in entirety, that is, that both as one person were seized of the whole estate, so that the survivor would take it. Therein the fraud is said to reside. To them, unless the law otherwise informed them, the deed seemed to say that they had taken the title in themselves as two persons, although decision, resting on an ancient fiction, declares that they took title as one person. In legal effect she and he did unite their two property interests. He gained the right to take her interest if he survived her; she acquired the right to take his interest if she survived him. She, solvent, ventured her interest upon the contingency; he, owing $1,500 and unable to pay it save for this land, committed his greater interest to the chances of living. The husband, living, had a right of enjoyment and what was a valuable property interest. By the manner of creating the tenancy he took something like a defeasible estate in $27/42$ of the property, whereas in such part he was entitled to a fee simple

absolute, and she did the same in $^{15}/_{42}$ of the land.   Potentially it involved loss to his creditor, assuming that his interest acquired was less valuable than if he had taken as tenant in common.   What he did was not without consideration, for he acquired rights of survivorship in her property and the benefit of her assumption of the mortgage.   The real question, then, is whether a debtor with no intention in fact to defraud is guilty of a legal fraud if he, entitled to take as a tenant in common to the extent of $^{27}/_{42}$ of land, does take as a tenant by the entirety with his wife, who of right could take as a tenant in common to the extent of $^{15}/_{42}$ and assumes with him a mortgage for $^{30}/_{72}$ of the whole purchase price.   I am inclined to the view that the statute quoted saves the right of the creditor, and that the manner of receiving the conveyance must, as to him, be regarded as voluntary and therefore fraudulent in law.   The debtor exposed his interest to the hazard of the creditor losing it if the wife survived. It created in the wife an estate in fee, dependent upon her surviving the husband, and although there was some consideration, the debtor could not render his fee dependent upon the accident of his survivorship.   The wife must be deemed to have held $^{27}/_{42}$ of the land in trust for her husband's creditors.

[2-4] The conveyance is not void as found; otherwise there would be no title through Joseph.   The trust should be enforced by selling, not the entire land as adjudged, but Joseph's interest in it.   Nor do I perceive any reason for granting relief to plaintiff as administrator. The transaction was fraudulent only as to creditors "at that time." Plaintiff individually is the only creditor proven to have existed then or later.   The statute makes the creditors the beneficiaries, and they follow the trust property by virtue of the statute.   The complaint alleges that Joseph Sartori left no creditor unpaid other than the plaintiff.   There is no evidence of other creditors or finding that they exist.   Therefore the plaintiff individually should enforce the trust.

[5] It is urged that the action is barred by the six-year statute of limitations.   The indebtedness arose on May 15, 1907.   Interest was paid by Joseph to May 15, 1908, and the aunt made a payment of some sum.   Joseph died out of the state, and the administrator was not appointed until January 12, 1914.   It is evident that the debt was not barred.   The conveyance was made in May, 1907, and this action was begun December 18, 1915.   Six years had not elapsed since the discovery of the fraud, which was in 1913.

The judgment and finding should be modified so as to limit, in behalf of the plaintiff individually, the sale of the property to the extent of the $^{27}/_{42}$ interest owned by Joseph Sartori, and the judgment as so modified should be affirmed, without costs.

Settle order.   All concur.